## DRAPER v. INTERBOROUGH RAPID TRANSIT CO. et al.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

1. EVIDENCE—OTHER TRANSACTIONS—DECLARATIONS—ADMISSIBILITY.

In an action against a subway railroad company, a subway construction company, and a cable company for the death of an employé of the construction company, caused by a ladder, cable reel, and plank being placed on or near a track in a subway tunnel by the cable company, which obstructed a work train on which decedent was riding and caused the accident resulting in his death, one of the employés of the construction company, who testified that he had passed through the tunnel about 20 minutes before the accident occurred, further testified that he said to the employés of the cable company: "When you fellows put anything on the track, you want to keep a light out there a ways from you, about 50 feet. You fel-

lows came near wrecking me twice, and I don't want it to happen again." *Held*, that the statement of the witness as to what had occurred before was incompetent and prejudicial to the cable company, and should have been stricken out.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 1058.]

2. NEGLIGENCE—ACTIONS—INSTRUCTIONS.

There was evidence that the cable company's employés placed proper lanterns to warn approaching trains of the obstructions, and also that a train had never before the accident been sent through rapidly or without being preceded by a man on foot to give warning. *Held*, that a charge, instructing the jury that the placing of the lantern on the track and the leaving of the reel near it was a failure of the cable company to observe due care and caution as a matter of law, was error prejudicial to the cable company, as giving the jury to understand that they could hold such company liable on the mere fact that its employés placed the articles where a passing train might come in contact with it, and pretermitting the question as to whether they used due care to avoid such contract by placing proper lanterns to warn approaching trains.

3. TRIAL—INSTRUCTIONS—ERROR CURED BY SUBSEQUENT INSTRUCTIONS.

An erroneous instruction, authorizing a recovery against the cable company on the mere fact that its employés placed the articles where passing trains might strike them, regardless of whether they used due care by placing proper lanterns to warn approaching trains, was not cured by a subsequent instruction that if the cable company was negligent in placing the ladder or the reel where it did, without taking proper precautions to warn approaching trains, it would be responsible for its acts of negligence; nor by a further charge, at the cable company's request, that its employés had the same right to use the space in the tunnel for the performance of their work as had the operators of the work train or any other workmen engaged in the construction of the tunnel and railroad, which charge was given with the qualification that it was subject to the instructions already given, and that the cable company's employés were bound to exercise due care and caution in the handling of their appliances, where the court subsequently refused to charge that the cable company could not be held liable on the mere fact that it obstructed the track.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 703–718.]

Appeal from Trial Term.

Action by Sarah A. Draper, as administratrix of Frederick Draper, deceased, against the Interborough Rapid Transit Company, the National Conduit & Cable Company, and another. From a judgment for plaintiff, and from the refusal of a new trial, the National Conduit & Cable Company separately appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and HOUGHTON, JJ.

Frank V. Johnson, for appellant.

James A. Allen, for respondent.

LAUGHLIN, J. This is a statutory action to recover for the death of Frederick Draper, alleged to have been caused by the negligence of the three defendants. A recovery has been had against all; but the National Conduit & Cable Company has appealed on a separate record.

On the 27th day of June, 1905, the decedent was in the employ of the defendant the Rapid Transit Subway Construction Company, and died from injuries received while riding on a flat car through the westerly tube of the Interborough Tunnel, so called, under the Harlem river. A reel upon which cable was wound was on the flat car on which

he was riding, and was tipped over through the car striking a ladder resting upon the track, precipitating it against an empty cable reel on the ground near the track, which was thereby moved into contact with the car. This appellant was engaged in the performance of the work of installing the cables for conveying the electric current in the septum between the two tubes of the tunnel under a contract with decedent's employer. Each subway track was constructed in a steel tube 15 feet 6 inches in height and 14 feet in width. The tubes were parallel and side by side, and are described as like the barrels of a double-barrel shotgun. In the septum, and toward the top of the tubes, there were conduits for the cables. At the southerly end of the tube an employé of the cable company was in charge of a winch used for drawing the cables through from the northerly end, and he testified that he had there placed a red lantern on a raised platform about 2½ feet above the ground between the tracks, to indicate that his company was at work in the tunnel. The tubes were about 640 feet in length. At the northerly end of the tubes employés of the appellant were preparing to pass the cables through, and in the westerly tube, within a few feet of the northerly end of it, they had placed a ladder, with the lower end resting against the easterly rail of the south-bound track, which had already been constructed in the tube, and the upper end resting against the septum. An empty reel lay upon the ground at the east side of the track and within a few feet of the ladder. The employés of the appellant were preparing to extend a plank from the ladder to the empty reel, upon which men might stand to assist in "feeding" or passing the cables along the conduit; and there is testimony showing that they had placed a red lantern near by to the south, between the rails of the track, to indicate that the track was obstructed. The operating company had not taken possession. The work of construction was not completed, and no passenger trains were yet running. Other contractors were working along the track from time to time at different points.

The evidence on the part of the appellant tends to show that the ladder had been so placed about 20 minutes prior to the accident; that occasionally, prior to this time, a work train or repair train came through the tunnel, but that it was always moved slowly, and was preceded by a man on foot, with a lantern with a white light to give notice to those using the track, and to enable them to remove obstructions, and that they had theretofore been propelled by a motor car; that the car on which decedent was riding was on the northerly end of a train, consisting of two flat cars loaded with reels and a steam engine, which was on the southerly end and was moving the train northerly through this tunnel at a very rapid rate of speed without being preceded by a man on foot, as usual; that no notice of its approach was given, excepting by sounding the whistle. The evidence tends to show that, as soon as the approach of the train was discovered, an employé of the appellant picked up the lantern with the red light which had been placed between the tracks and waved it, but that the train continued on at a rapid rate of speed until after the accident. The conductor was standing on the northerly end of the northerly flat car. He testified that

he did not see the obstruction at all, but that when they came within 25 or 50 feet of the northerly end of the tube he saw a man run out onto the track with a red light, and that he signaled the engineer to stop, but did not know whether the engineer acted upon it before the accident. The tube was lower in the middle than at either end. The engineer testified that the speed was about 15 miles an hour in the middle, and was increased to 18 on the upgrade coming out; that he heard the conductor shout, and applied the brakes, but that it was too late to avoid the accident.

Testimony was given by two employés of the Subway Construction Company that they had passed through the tunnel about 20 minutes before the accident, which occurred about 9 o'clock at night, and notified the employés of the appellant to remove the ladder, reel, and plank, as a train was about to be sent through. One of those witnesses, in answer to a question as to what he said to the employés of the appellant, testified that he said:

"When you fellows put anything on the track, you want to keep a light out there a ways from you, about 50 feet. You fellows came near wrecking me twice, and I don't want it to happen again."

Counsel for the appellant duly moved to strike out this answer. The motion was denied, and he duly excepted. Perhaps this ruling was not strictly erroneous, owing to the fact that the record does not show that the request was confined to the statement as to what had occurred before, and therefore it would not alone warrant granting a new trial; but this declaration was incompetent, and most prejudicial to the appellant, and it should have been stricken out.

We are of opinion that the court erred in instructing the jury with respect to the liability of the appellant. Under the charge, it well may be that the jury understood that they were at liberty to hold the appellant on the mere fact that its employés placed the ladder upon the track where a passing train would come in contact with it; and it is very clear that they were given to understand that they might find the appellant guilty of negligence for placing the ladder on the track, regardless of the precautions taken to guard against accidents therefrom. The evidence was conflicting as to whether it was necessary for the appellant to place the ladder upon the track to properly do this work. We are of opinion that it had a right, in the circumstances, to use the track and to obstruct the track in doing its work, provided it exercised proper care and caution to warn others lawfully using the track of the fact that the track was obstructed, and to enable it to remove the obstruction when that became necessary to permit a train to pass. The jury would have been justified in finding, upon the evidence, that the employés of the appellant had no notice, actual or constructive, that a train was to be sent through the tube at that time until they heard the whistle. If so, they certainly had the right to use the track in doing their work, and the precaution which they took in placing a red light between the tracks at the southerly end of the tube, if it was so placed, and in placing a red light between the tracks near where the work was being done, would have warranted the jury in exonerating them from the charge of negligence, especially if, as the evidence

tends to show, a train had never before been sent through rapidly, or
without being preceded by a man on foot to give warning. The court
first instructed the jury that:

"If the cable company, through its servants, placed an obstruction on the
tracks that were running through that tunnel, and if in placing that obstruction
it was negligent and careless in so doing," if the obstruction caused the acci-
dent, "the cable company must be held responsible for its failure to exercise
reasonable and due care and caution with regard to the placing of obstruc-
tions on the track."

The court also said to the jury that, if the appellant "placed that
wire reel upon the tracks in a place of danger that imperiled the safe-
ty of a passing train, then the cable company must be held responsible
for its failure to observe due care and caution in the handling of its
materials and the using of its appliances; and if because of that fact"
the decedent was killed "it must be held responsible for the consequen-
ces." This in effect was an instruction that placing the ladder upon
the track and leaving the empty reel near the track constituted a fail-
ure on the part of the appellant to observe due care and caution as
matter of law. Later on the court said to the jury:

"As to the cable company, I substantially repeat, what I have said before,
that if they, by their acts of omission, or commission, or negligence, placed
obstructions upon or near the track, so as to be dangerous to trains that they
might reasonably expect to come along those tracks, whatever the consequences
that followed their acts, they must be held liable, and if the death of the de-
ceased was one of those consequences they must be held to answer."

Counsel for the appellant duly excepted to the charge of the court
on this subject. Later on, it is true, the court said:

"And if you find that the cable company was guilty of an act of negligence
in placing the ladder where it did, without taking proper precautions to warn
approaching trains, or placing the reel where it did without taking proper pre-
cautions to warn approaching trains, you will hold it responsible for its acts
of negligence."

We think the charge was erroneous, and did not fairly present to
the jury the conditions upon which the liability of the appellant could
properly be predicated. The error was not cured by the further charge,
at the request of the appellant, that its employés had the same right
to use the space inclosed by the walls of the tunnel for the proper per-
formance of their work as had the operators of the work trains or any
other workmen engaged upon the construction of the tunnel and rail-
road, which the court charged, "subject to the instructions I have given
you, but that they are bound to exercise due care and caution in the
handling of their appliances," etc., to which modification exception was
also duly taken; for the court thereafter declined to charge the jury,
at the request of counsel for the appellant, that it could not be held
liable on the mere fact that it had obstructed the track, and excep-
tion was duly taken to such refusal. The court also declined to instruct
the jury that the employés of the appellant had a right to rely upon
the usual and customary notice and warning of the approach of a
train, and that without such notice or warning it could not be charg-
ed with negligence for not removing the obstructions prior to the ap-
proach of the train, unless it had knowledge of its approach. This

may not have been error, for it was quite likely a question for the jury.

Counsel for appellant, however, thereupon again requested the court to instruct the jury that the mere fact that the track was obstructed by the work which appellant was doing "is not sufficient upon which to predicate negligence on the part of that company," to which the court replied, "I have disposed of that request already, and I will make no further ruling than I have," and a further exception was taken. As already observed, the jury may have inferred that they were at liberty to hold the appellant merely because it obstructed the track, and in any event it is probable that they understood that they were at liberty to hold appellant for negligence in putting the ladder on the track, no matter what precautions were taken to warn or discover an approaching train.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

PATTERSON, P. J., and McLAUGHLIN and HOUGHTON, JJ., concur.

INGRAHAM, J. (concurring). I concur in the reversal of this judgment, because I do not think that the evidence justified a verdict that the defendant or its employés were negligent. The tunnel was not in operation, except for the transportation of material used in the construction of the road. The appellant was doing work in the tunnel, was justified in making such use of it as was necessary for the proper completion of the work, and its employés had the right to assume that before any of these irregular trains were operated some notice would be given. Under such circumstances it was not negligent to place a ladder upon the track, especially where it appeared by the undisputed evidence that a red lantern was placed at some distance from where the men were at work.

I think, therefore, that a verdict against this appellant was against the weight of evidence, and for that reason the judgment should be reversed.